RECEIVED
IN LAKE CHARLES, LA.
JUL -8 2013
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LIENHARD, ET AL | : | DOCKET NO. 2:13-CV-00676-PM-KK |
| VS. | : | JUDGE MINALDI |
| LAXMI OF NEW LLANO, D/B/A HAMPTON INN LEESVILLE FORT POLK | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM ORDER

Before this court is a Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. 3], filed by the defendant, Laxmi of New Llano, LLC ("Laxmi"). The plaintiffs, Christopher Lienhard ("Lienhard"), Monae Lienhard, individually and on behalf of their minor daughter, Elizabeata Allie Lienhard, and Ian Lienhard (collectively "the plaintiffs") filed an opposition, [Doc. 7], and Laxmi filed a reply [Doc. 8]. For the forgoing reasons, Laxmi's motion is GRANTED.

## BACKGROUND

This case arises out of a negligence action against Laxmi after Lienhard was found injured in a Laxmi-operated Hampton Inn in Leesville, Louisiana.[1] The plaintiffs filed this action on April 1, 2013 in this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.[2]

On March 29, 2012, Lienhard checked in as a guest at the Hampton Inn in Leesville, Louisiana.[3] Lienhard was assigned to room 221 on the second floor of the hotel.[4] His first three days at the hotel were uneventful.

---

[1] Pls.' Comp., [Doc. 1].

[2] *Id.* at ¶ IV.

[3] *Id.* at ¶ VI.

[4] *Id.*

1

On April 1, 2012, Lienhard was captured by the hotel's video surveillance cameras exiting his room and wandering the second floor hallway.[5] The surveillance cameras then showed Lienhard enter an elevator and reappear on the fourth floor, where he again aimlessly wandered the hall.[6] At approximately 8:35 p.m., Lienhard entered room 401, which a Hampton Inn employee had left unlocked and was unoccupied by any other guests.[7] Upon entering the unoccupied room, Lienhard collapsed from what was later determined to be an aneurysm.[8]

On April 2, 2012, Lienhard was scheduled to have a meeting in the hotel lobby at 6 a.m. with a co-worker.[9] When Lienhard failed to show up for the meeting, his co-worker attempted to reach him by telephone to no avail.[10] After several minutes, the co-worker approached hotel staff, in fear something was wrong, and asked for assistance in searching Lienhard's hotel room.[11] The hotel staff initially refused the requests.[12]

At approximately 9:20 a.m. on the same day, the hotel staff entered Lienhard's hotel room and found that his belongings were in order, but Lienhard was absent.[13] The co-worker then requested that the hotel staff review the surveillance tapes to determine Lienhard's whereabouts, and the hotel staff again refused.[14] At 11:25 a.m., the co-worker phoned the New

---

[5] *Id.* at ¶ VIII.

[6] *Id.* at ¶ IX.

[7] *Id.* at ¶ X.

[8] *Id.*

[9] *Id.* at ¶ XI.

[10] *Id.* at ¶ XII.

[11] *Id.* at ¶ XIII.

[12] *Id.* at ¶¶ XII – XIV.

[13] *Id.* at ¶ XV.

[14] *Id.* at ¶ XVII.

Llano Police Department, who arrived at the hotel shortly after.[15]

At approximately 1:00 p.m., an unrelated guest rented room 401 of the hotel and discovered Lienhard laying on the floor, unable to speak but making moaning noises.[16] An ambulance was summoned to the hotel, which transported Lienhard to Byrd Regional Hospital.[17] The hotel surveillance footage confirmed the events above.[18] As a result of the aneurysm, Lienhard required multiple surgeries in an attempt to improve his health, but some of his condition is permanent and irreversible.[19]

Laxmi now moves to dismiss the plaintiffs' negligence claim, arguing that it owed no duty to Lienhard which would make it liable for his injuries.

## RULE 12(B)(6) STANDARD

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations. FED. R. CIV. P. 12(b)(6). When ruling on a 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Gogreve v. Downtown Develop. Dist.*, 426 F. Supp. 2d 383, 388 (E.D. La. 2006).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 652, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads the factual

---

[15] *Id.* at ¶ XVIII.

[16] *Id.* at ¶ XIX.

[17] *Id.* at ¶ XX.

[18] *Id.* at ¶ XXI.

[19] *Id.* at ¶¶ XXV – XXVIII.

3

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . Determining whether a complaint states a plausible claim for relief. . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Id.* Courts will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir.2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.2005)); *see also Iqbal*, 556 U.S. at 664, 129 S.Ct. at 1940 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.")

## LAW & ANALYSIS

There are two issues in this action the court must address. First, the court must address whether Laxmi was negligent when its employee failed to lock a guest room, which allowed Lienhard, suffering from an aneurysm, to wander into it, collapse, and remain undiscovered for a number of hours. Second, the court must address whether Laxmi was negligent when its employees failed to use video surveillance cameras to locate a missing guest.

### I.     An Innkeeper's Duty-Generally

To determine whether the plaintiffs have met their burden of properly stating a claim upon which relief may be granted, this court must analyze the plaintiffs' alleged facts against the background of the applicable negligence law of Louisiana. Louisiana Civil Code Article 2315 states that "[e]very act whatever a man that causes damage to another obliges him by whose fault it happened to repair it." "We are responsible, not only for the damages occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the

things which we have in our custody…" La. Civ. Code art. 2317. "The owner or custodian of a thing is answerable for damages occasioned by its ruin, vice, or defect, only upon showing that he knew or…should have known of the ruin, vice or defect which caused the damage…the damage could have been prevented [and] he failed to exercise such reasonable care." La. Civ. Code art. 2317.1.

The Louisiana Supreme Court has adopted a "duty-risk" analysis to determine whether liability may be assessed in negligence cases. *Syrie v. Schilhab*, 96-1027 (La. 5/20/97); 693 So. 2d 1173, 1176; *Posecai v. Wal-Mart Stores, Inc.*, 99-1222 (La. 11/30/99), 752 So. 2d 762, 765. Under duty-risk analysis, a plaintiff must prove that (1) the defendant owed a duty of care to the plaintiff; (2) the requisite duty was breached; (3) the risk of harm was within the scope of protection afforded by the duty; and, (4) the defendant's conduct was the cause-in-fact of the resulting harm. *Syrie*, 693 So. 2d at 1176-77. In order for the plaintiff to recover, all four inquiries must be answered affirmatively. *Mathieu v. Imperial Toy Corp.*, 94-0952, (La.11/30/94), 646 So. 2d 318, 322.

Whether or not a defendant owes a duty to a plaintiff is a matter for the courts. *Meany v. Meany*, No. 94-0251 (La. 7/5/94); 639 So. 2d 229, 233. In deciding whether a defendant owes a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. *Posecai*, 752 So. 2d at 766 (referencing *Socorro v. City of New Orleans*, 579 So. 2d 931, 938 (La.1991). In making this assessment,

> The court may consider various moral, social, and economic factors, including the fairness of imposing liability; the economic impact on the defendant and on similarly situated parties; the need for an incentive to prevent future harm; the nature of defendant's activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and its institutions are evolving.

*Id.*

Louisiana courts have summarized an innkeeper's duty as follows:

> While the proprietor of a public place is not the guarantor of his patrons' safety, he owes them a duty to exercise reasonable care to protect them from harm at the hands of a fellow-guest or at the hands of his employees; such a proprietor owes a duty to guests to protect them from insult, annoyance and danger, and his guests have a right to rely on the belief they are in an orderly house and are protected from injury by the exercise of reasonable care for their safety by the operator of the establishment or his representative.

*Oren v. Capstar Hotels of Slidell, Inc.*, No. Civ.A. 01-3193, 2003 WL 181012, *2 (E.D. La. Jan. 23, 2003) (quoting *Turley v. Straughan*, 96-2607 (La. App. 4 Cir. 4/30/97); 694 So. 2d 532, 533.)

Innkeepers are not responsible for unforeseeable or unanticipated harms. *Id.* Nor is liability imposed unless there is evidence that the defendant had knowledge (or should have had knowledge) of the impending threat to a patron's safety. *Id.* Thus, the Louisiana Supreme Court has adopted the "balancing test" to determine the requisite duty owed by a particular business owner to a particular guest. *Posecai*, 752 So.2d at 768. Under the balancing test, the court must measure the foreseeability of the harm and the gravity of the harm against the commensurate burden imposed on the business to protect against that harm. *Id.* "In cases in which there is a high degree of foreseeability of harm and the probable harm is great, the burden imposed upon defendant may be substantial. Alternatively, in cases in which a lesser degree of foreseeability is present or the potential harm is slight, less onerous burdens may be imposed." *Id.*

## II.   Laxmi's Duty to Maintain Safe Premises

In this case, Laxmi admits that it did have a general duty to Lienhard as a guest of the hotel. Laxmi, nevertheless, claims that the general duty to protect Lienhard from injury did not extend to Lienhard's particular harm because it was not a foreseeable risk. This court agrees.

The plaintiffs first rely on *Kraaz v. LA Quinta Motor Inns, Inc.*, 410 So.2d 1048 (La. 1982), in support of imposing a duty on the defendants. In *Kraaz*, hotel guests were victims of an armed robbery after a hotel employee gave two men a passkey to all of the rooms in the hotel,

who then used it to break into the hotel guests' room. *Id.* at 1050. The court found the hotel negligent because it had a duty to take reasonable precautions in protecting its customers from criminal attack, which it breached by giving out the passkey. *Id.* at 1053.

The plaintiffs next turn to *Banks v. Hyatt Corp.*, 722 F.2d 214 (5th Cir. 1984). In *Banks*, a guest of the innkeeper/defendant was gunned down outside the entrance to the hotel. *Id.* at 215. The victim's family subsequently filed suit, alleging that the hotel had not provided adequate security, nor had it properly warned the guest of foreseeable criminal danger. *Id.* at 215–16. The court found that the hotel was adequately aware of the dangers outside of the hotel, and thus they had a duty to provide reasonable security and warning to its guests. *Id.* at 227.

The plaintiffs then cite *Mundy v. Dept. of Health and Human Rescources*, No. 620 So. 2d 811 (La. 1993). In *Mundy*, a third party violently attacked a nurse employee on the premises of the defendant's hospital. *Id.* at 811. The *Mundy* court found that the defendant had not breached its duty to the plaintiff because the attack was unforeseeable and not reasonably anticipated. *Id.* at 814.

From these cases, the plaintiffs have established that Laxmi had a duty to take reasonable action to protect its guests from foreseeable criminal attacks. The plaintiffs, however, do not allege that Lienhard was an unwitting victim of any such criminal act. Indeed, the plaintiffs make no mention of fault by any third parties. This court, therefore, does not find these cases binding or persuasive in the current action. Furthermore, imposing a duty on innkeepers to constantly ensure all unrented guest rooms are locked presents an undue burden upon innkeepers in relation to the possible harms that an unlocked guest rooms may cause (namely, preventing impaired guests from wandering into unoccupied rooms).

### III.    Laxmi's Duty to Aid

7

The plaintiffs also claim that Laxmi breached its duty to take reasonable measures to aid Lienhard. Innkeepers have a duty to give reasonable aid to patrons in need if the innkeeper knows or should know that the patron is ill or injured. *See Banks*, 722 F.2d at 226. In the complaint, the plaintiffs allege that Laxmi had a duty to review surveillance video to locate Lienhard after his belongings were found in his hotel room. In support of this argument, the plaintiffs cite *Estate of Hutchins v. Motel 6 Operating, L.P.*, No. 4:05CV01304, 2006 WL 2365590 (E.D. Ark. Aug. 14, 2006), an innkeeper liability case in which a plaintiff's claim survived summary judgment. In *Hutchins*, a hotel guest's girlfriend discovered the guest passed out and unresponsive in a hotel room owned by the defendant. *Id.* at *1. She thus went to the hotel clerk's desk and asked them to call 911. *Id.* The hotel clerk did not call 911 until over thirty minutes later, after the hotel manager arrived on the premises and inspected the room to confirm the guest was passed out. *Id.* at *2. At some unknown time, the guest passed away. *Id.* Because of the delay in calling 911, the court found that the plaintiff had created a sufficient fact issue on whether the hotel employees acted in a negligent manner, as they had notice of the guest's condition but failed to act within a critical time period. *Id.* at *3.

In contrast to *Hutchins*, in the case at bar, the hotel staff merely found Liendhard's personal effects, which seemed to be in order. Lienhard was not in the room, nor was he seen by any of the staff of the hotel. This court therefore does not find *Hutchins* to be persuasive. If anything, *Hutchins* stands for the premise that an innkeeper has a duty to aid when he knows or should know that his patron is in need of aid. Based on the briefs before this court, it is evident that Laxmi did not know or have reason to know that Lienhard was in need of aid – it only knew that he was not in his room, an event that could have been caused by any number of non-life-threatening things. Furthermore, it would be unduly burdensome to impose a duty on innkeepers

8

to investigate the whereabouts of any of their patrons, when that patron has only been unaccounted for during a short time period. Thus, the plaintiffs' claim with regard to the defendant's failure to aid must be dismissed. Accordingly,

**IT IS ORDERED** that Laxmi's Motion to Dismiss is **GRANTED**.

Lake Charles, Louisiana, this 8 day of July, 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT
JUDGE